[Civ. No. 28503. Second Dist., Div. One. Dec. 28, 1964.]

HUGH R. GALLAGHER, Plaintiff and Respondent, v. HARVEY E. BOLLER, as County Assessor, etc., Defendant and Appellant.

Woodruff J. Deem, District Attorney (Ventura), and K. D. Lyders, Deputy District Attorney, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Dan Kaufmann, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, as Amicus Curiae on behalf of Defendant and Appellant.

Hugh R. Gallagher, in pro. per., for Plaintiff and Respondent.

WOOD, P. J.— Hugh R. Gallagher, as a citizen, sought a writ of mandate in the superior court compelling the Assessor of Ventura County to permit him to inspect documents in the assessor's office relating to a welfare tax exemption of the Seventh Day Adventist Church with respect to its operation of the Newbury Park Academy. Judgment was in favor of petitioner, and a peremptory writ of mandate was issued directing the assessor to permit inspection of the affidavit or declaration of exemption and the assessor's records showing his ruling thereon. The assessor appeals from the judgment.

Appellant contends that the documents as to which inspection was ordered or allowed are excluded from the purview of the general inspection statutes by express legislative restriction, by administrative interpretation, and because the documents are held in official confidence. He also contends that the court was without jurisdiction to make such order because the church was an indispensable party and it was not included as a party to the action; that the question of inspection is moot because the assessor had advised petitioner's law partner of the assessor's ruling on the claim; and that petitioner had not exhausted available administrative procedure prior to commencing this action.

On March 17, 1964, Mr. Romney, law partner of petitioner Gallagher, sent a letter to the assessor stating that Romney's firm represented a commercial laundry which, according to Romney's assertion, was being injured by competition from a laundry that was operated by the Newbury Park Academy (owned and operated by the church), and that such commercial activity of a tax-exempt organization would be inconsistent with its claim that the property was being used exclusively for school purposes. The letter also stated, in referring to such commercial activity that the Academy had been and is providing laundry service for the Oxnard Air Force Base, the Conejo Valley Hospital, and a motel in Camarillo.

On Friday, March 20, 1962, petitioner went into the assessor's office and demanded permission to inspect the affidavit or declaration submitted to the assessor by the Seventh Day Adventist Church claiming a welfare exemption from property taxation in connection with its operation of the Newbury Park Academy. He also demanded permission to inspect the assessor's ruling on this claim for exemption. The assessor refused the demands.

On March 23, 1964, petitioner sent a letter to the assessor setting forth in detail the petitioner's claims of right as a citizen to inspect said documents as to which the assessor had refused petitioner's demands.

On that same date (March 23), the assessor's chief appraiser replied to Mr. Romney's letter, stating in substance that the assessor had determined that the Academy's laundry facilities did not meet the exemption requirements and that this portion of the Academy property was not exempt from property taxation.

On March 24 the assessor replied to petitioner's letter,

advising him that all of the documents which petitioner sought to inspect were confidential and not open to public inspection.

Mr. Gallagher then filed this petition for writ of mandate, alleging the above mentioned facts as to his oral and written demands for permission to inspect, and alleging that the assessor's refusal to allow such inspection was contrary to petitioner's rights as a citizen of California under the general inspection statutes. The petition included, as exhibits, his letter of March 23 to the assessor and the assessor's letter of March 24 in reply thereto.

The assessor's answer to the petition alleged that the assessor had indicated to petitioner his (assessor's) ruling on the church's application for exemption, and alleged that the assessor was prohibited by law from permitting inspection of any records relating to such ruling. The assessor also filed points and authorities, to which the following exhibits were attached: (1) a set of welfare exemption claim forms (in blank); (2) a form of business property statement (in blank); (3) Mr. Romney's letter of March 17 to the assessor; and (4) the chief appraiser's letter of March 23 in reply to Mr. Romney's letter.

On the return date of the alternative writ the matter was submitted on the pleadings and "points and authorities." (Petitioner also had filed points and authorities.) Judgment in favor of petitioner was entered on May 20, 1964.

Section 1892 of the Code of Civil Procedure provides that every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise provided by statute. Section 1227 of the Government Code provides that the public records and other matters in the office of any officer, except as otherwise provided, are at all times during office hours open to inspection of any citizen of the state. In addition to these general inspection statutes, the Legislature has stated that it is the policy of the state that public records and documents be open for public inspection in order to prevent secrecy in governmental affairs. (Stats. 1959, ch. 111, p. 5588.)

Appellant contends, however, that section 408 of the Revenue and Taxation Code prohibits inspection of the documents as to which the court permitted inspection. Said section 408 provides:

"(a) Except as otherwise provided in subdivision (b) any information and records in the assessor's office which are not

required by law to be kept or prepared by the assessor are not public documents and shall not be open to public inspection.

"(b) The assessor shall permit an assessee of property to inspect at the assessor's office any information and records, whether or not required to be kept or prepared by the assessor, relating to the appraisal and the assessment of his property, except information and records which also relate to the property or business affairs of a person other than the assessee."

Since subdivision (b) of section 408 relates to an assessee who seeks inspection of records relating to his property, and since the petitioner is not an assessee, that subdivision is not of particular significance herein.

Appellant assessor asserts that the documents sought to be inspected (documents relating to the church's claim of exemption) were records which were not required by law to be kept or prepared by him, and therefore they were not public documents and were not open to public inspection. It is apparent that such documents, wherein the church was asking for a special benefit for itself, namely, an exemption from taxation, were not required by law to be *prepared* by the assessor. Presumably the church, using the printed forms provided by the assessor for such applications, *prepared* its own application for such exemption and submitted it to the assessor for determination. Since such an application is the basic document upon which the assessor's approval or rejection of tax exemption rests, and since sections 254 and 254.5 of the Revenue and Taxation Code specify that the claimant shall file such application in duplicate with the assessor who shall retain the original and send a copy to the Board of Equalization, it is to be assumed that the assessor retains possession or custody of the original of that basic document. In the present case, the answer of the assessor admits that he has possession of the application. Appellant assessor contends, however, to the effect that even though the application is retained or possessed by him, it is not "kept" by him within the meaning of the word "kept" as used in the phrase "required by law to be kept or prepared by the assessor." In his briefs, he does not state what he considers to be the meaning of the word "kept," as used in section 408, but it does appear from his points and authorities submitted to the trial court (and included in the clerk's transcript) that he there argued to the effect that the word "kept," as so used, means "maintain" in the sense of keeping books or maintaining records, such as those which

he prepares or originates. The amicus curiae (Board of Equalization) argues to the effect that the word "kept," in section 408 is used in the sense of "to maintain" or "maintained," for example (as stated in Webster's Dictionary), "to maintain a record of transactions, accounts, or events in; as, to keep books." The amicus curiae asserts further that a person does not "keep a record" simply by having custody or possession of books. It thus appears that the position of the appellant assessor and the amicus curiae is that the word "kept," as so used in the phrase "kept or prepared," means "maintain" in the *active* sense of the assessor's preparing and keeping his own records, and that it does not mean "maintain" in the *passive* sense of retaining in his custody documents prepared by the property owner and submitted to the assessor for consideration (such as the affidavit or claim of exemption herein).

Under such interpretation of the word "kept" by the assessor and the board, it is clear that the assessor's ruling upon the application for exemption (which ruling is made or prepared by the assessor, and retained by him) is kept by the assessor. Also, under such interpretation by them, it is clear that the assessor's field inspection report (which is made or prepared by the assessor, and attached to the application and retained by him) is kept by the assessor. The assessor states that the assessment roll, which of course was kept and prepared by him, was open to public inspection, and that his ruling with reference to the church's claim for exemption was noted or written informally thereon.

It seems that the appellant's (assessor's) interpretation of the word "kept" as used in the phrase "kept or prepared," is that "kept" is synonymous with the word "prepared." Since those words are separated by the word "or" and are used in the disjunctive sense, it seems that those words were intended to have different meanings—that the word "kept" was not intended to mean the same as the word "prepared." An administrative interpretation of those words by the Board of Equalization indicates that the board considers that the records required by law to be kept or prepared by the assessor are not limited to records required to be made or prepared by the assessor. ▪ The board, as amicus curiae, states in effect that, pursuant to its duty of advising assessors concerning uniform taxation, it has prepared the "Assessors' Handbook" as a basic guide for use by assessors. Section 201 of that book, in referring to said section 408, states:

"Records required by law to be kept or prepared by the assessor are inferentially available to the public for inspection under Section 408. They include: 1. The assessment roll and index prepared by the assessor pursuant to Sections 601 and 615. 2. Owner's maps used in describing land for assessment purposes pursuant to Section 326.[1] 3. County Assessor's maps used pursuant to Section 327. 4. Maps maintained by assessors in accordance with Sections 1254 and 1255." It thus appears, according to the board's guide book, that "Owner's maps" (subdivision "2" above) prepared by the property owner and filed with the assessor are documents required by law to be "kept or prepared" by the assessor. Certain provisions of the handbook (including the provision above quoted) are attached to the brief of the board. This court may take judicial notice of that book. (See *Bank of America* v. *County of Los Angeles*, 224 Cal.App.2d 108, 114 [36 Cal.Rptr. 413].) ■ If the Legislature had intended to restrict the records which were open for public inspection to records prepared by the assessor, it would seem that there would have been no point in using the word "kept" as an alternative in connection with the use of the word "prepared." The word "kept," as used in the phrase "kept or prepared," may properly be interpreted as referring to the affidavit or claim of exemption and to the assessor's records showing his ruling thereon.

■ Appellant assessor also contends that the documents as to which inspection was ordered or allowed were held in official confidence by the assessor, and by reason thereof the general inspection statutes were not applicable. In support of this contention, he cites section 1881, subdivision 5, of the Code of Civil Procedure which provides: "A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure." He also cites section 451 of the Revenue and Taxation Code which provides: "All information required by the assessor or furnished in the property statement shall be held secret by the assessor. The statement is not a public document and is not open to public inspection." Since

---

[1]Section 326 of the Revenue and Taxation Code provides: "Whenever a map, other than an official map, has been furnished by the owner, claimant, or user of land, and it contains sufficient information clearly to identify the land, and it is properly identified by and filed with the assessor or the board, the land may be described by reference to this map."

these two code sections are restrictive of the express legislative policy and general inspection statutes (which provide that public records and other matters are open to inspection), the sections should be construed strictly especially where it is contended that the matters are confidential under the privileged communications statutes. (See *Tanzola* v. *De Rita*, 45 Cal.2d 1, 5-6 [285 P.2d 897]; *Samish* v. *Superior Court*, 28 Cal.App.2d 685, 695 [83 P.2d 305]; 50 Cal.L.Rev. 79, 83.)

The burden of showing that matters are confidential within the meaning of the privileged communications statutes is on the party asserting the privilege. (*Tanzola* v. *De Rita*, *supra*, p. 6; *Samish* v. *Superior Court*, *supra*, p. 695.)

As above stated, the assessor attached points and authorities to his answer, and he attached to the points and authorities, as exhibits, certain printed blank forms, as follows: a set of blank forms used in claiming welfare tax exemption under section 254 of the Revenue and Taxation Code; and a blank form of property statement which is required to be filed by all taxpayers under section 441 of said code.

The property statement form states on the front thereof: "This Information Shall Become a Confidential Record." There is no statement on the welfare tax exemption forms, or in the assessor's instructions regarding it, to the effect that the information in a claim for such exemption is confidential. There was no evidence that a pledge of confidence was given by the assessor in order to obtain the information furnished to him by the applicant for a tax exemption.

Section 441 of the Revenue and Taxation Code provides: "Every person shall file a written property statement, under oath, with the assessor . . . . At any time, as required by the assessor for assessment purposes, every person shall furnish information or records for examination." It thus appears that it is mandatory that a property statement be filed by every person.

Section 451 of the Revenue and Taxation Code provides: "All information required by the assessor or furnished in the property statement shall be held secret by the assessor. The statement is not a public document and is not open to public inspection." It thus appears further that by statutory provision the mandatory property statement, required of every person, is confidential and not open to public inspection.

Section 254 of the Revenue and Taxation Code provides: "Any person claiming the church, . . . , or welfare exemption shall make a return of the property to the assessor annually, the same as property is listed for taxation, and shall

accompany it by an affidavit, giving any information required by the board.'' It is apparent, of course, that the matter of claiming a welfare tax exemption is not mandatory but is optional. According to this section, any person who elects to claim such exemption shall file an affidavit giving the required information.

It appears from this section that such optional or voluntary affidavit is a document separate from the property statement which is required of every person. As above indicated, there is no statutory provision that this optional and additional affidavit is confidential, and no statement is made on the affidavit form that the information therein is confidential.

Appellant assessor asserts that the reason the assessment information in a property statement is confidential, as provided in said section 451, is to encourage the property owner to make full and truthful declarations in his return without fear that his statements will be revealed or used against him for other purposes. (See *Webb* v. *Standard Oil Co.*, 49 Cal.2d 509, 513 [319 P.2d 621].) He also asserts that the policy of encouraging an owner to make full disclosure of tax information in a property statement should apply also to affidavits or claims for welfare tax exemption—that there is no logical reason for saying that the Legislature intended to encourage full disclosure in property statements but did not intend to encourage full disclosure in applications for exemption. As above shown, section 451 of the Taxation and Revenue Code expressly provides that the information furnished by an owner in the property statement, required to be made by him, is confidential information. It is to be noted, however, that section 254 which grants the privilege or option of applying for welfare tax exemption does not provide that the information in the application is confidential. In other words, the Legislature has expressly provided that the information in the required or mandatory property statement is confidential, but it has not provided that the information in the optional or voluntary application for exemption is confidential. Also, as above stated, the assessor's printed forms for use in making the mandatory property statement recite that the information to be furnished therein will be confidential; but the assessor's printed forms for use in making the optional application for tax exemption do not indicate that the information therein will be confidential.

Such contrasting circumstances, i.e., a statutory re-

quirement of confidentiality as to a required property statement and a lack of such statutory requirement as to voluntary application for welfare tax exemption, indicate a legislative intent that information furnished by a welfare organization in seeking the special privilege or benefit of tax exemption shall not be confidential. Such circumstances also indicate a public policy that a welfare organization, which contemplates applying for such special privilege, must elect whether it will forego the matter of keeping its property affairs confidential in order to be classified as a nontaxpaying owner of property.

Administrative interpretation of said section 408 (*re* "kept or prepared" records) and said section 451 (*re* property statements) of the Revenue and Taxation Code is to the effect that records kept or prepared by the assessor (under section 408) are not confidential, and that records made pursuant to section 451 are confidential. The "Assessors' Handbook" states (in section I) that said sections 408 and 451 "place certain restrictions upon the right of the public to inspect the records in the assessor's office . . . . They [sections] read as follows: . . . [sections 408 and 451 are quoted here]. Since these sections differ both as to information and records affected and restrictions imposed, they will be discussed separately. . . ."

In the discussion of section 408, under the subheading, "Nature of Restriction Imposed," the book states (in section II) : "It seems clear that records which by law are not required to be kept or prepared by the assessors are not subject to the above-mentioned sections of the Code of Civil Procedure and Political Code. However, since Section 408 *does not impose any obligation of secrecy,* it is believed that it permits a disclosure whenever such action is in furtherance of the work of the assessor or of some other public officer. . . . *Disclosure in response to a subpoena would not seem to be inconsistent with the section* . . . ." (Italics added.)

In the discussion of section 451 (regarding property statements), under an identical subheading, "Nature of Restriction Imposed," the book states (in section III) : "The purpose of provisions similar to section 451 is to give an assurance that the information requested *will be kept secret* and thereby encourage a complete disclosure by the taxpayer. In order to carry out this purpose the *section must be construed as restricting disclosures in court in response to a subpoena* as well as in other ways." (Italics added.)

It appears that the trial court properly concluded that the documents as to which inspection was ordered (the application for tax exemption and the records showing the assessor's ruling) were not confidential.

Another contention of appellant is to the effect that since certain administrative procedure was available for reviewing the assessor's alleged failure to assess property, the mandamus proceeding herein was not proper. The administrative procedure so referred to is that the assessor's determination as to welfare tax exemption may be reviewed by the Board of Equalization (Rev. & Tax. Code, § 254.5); any taxpayer having the necessary knowledge may file with the Board of Supervisors an affidavit alleging that certain property has escaped taxation through neglect of the assessor (Rev. & Tax. Code, § 1362); and then the Board of Supervisors shall direct the district attorney to commence an action on the assessor's bond for the amount of taxes lost by such neglect (Rev. & Tax. Code, § 1363). Appellant states further that if, after following such procedure, a taxpayer is convinced that the determination therein as to welfare tax exemption was not correct, it is likely that a mandamus proceeding would be appropriate. The principal issue herein is whether petitioner had a right to inspect certain documents regarding welfare tax exemption. As above shown, the said section 1362 provides that "Any taxpayer having the necessary knowledge may file . . . an affidavit, alleging . . . neglect of the assessor . . . ." Of course, the petitioner could not institute the so-called administrative procedure unless he had "the necessary knowledge" of the assessor's acts to enable him to make the affidavit referred to in the section. It is apparent that inspection of the records might well be a necessary prerequisite to initiating such administrative procedure. A mandamus petition was a proper method of procedure with respect to the matter of inspection of records. (See *Coldwell* v. *Board of Public Works*, 187 Cal. 510 [202 P. 879]; *Jessup* v. *Superior Court*, 151 Cal.App.2d 102 [311 P.2d 177].) It was not necessary for petitioner to pursue any administrative procedure as a condition preliminary to this action.

Appellant also contends that the court was without jurisdiction to make the order of inspection, because the church was an indispensable party to the action. This contention was not made in the trial court. Such an objection may be made for the first time on appeal. (See *Irwin* v. *City of Manhattan Beach*, 227 Cal.App.2d 634, 637 [38 Cal.

Rptr. 875].) The documents as to which the inspection order was made were in the possession of the assessor. The church voluntarily applied for tax exemption and filed the documents. As above indicated, the said application and records showing the ruling were not confidential. The church was not an indispensable party.

In view of the above conclusion, it is not necessary to determine other contentions on appeal.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied January 21, 1965, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1965.