[L. A. No. 29539.   In Bank.   Mar. 4, 1968.]

STATE BOARD OF EQUALIZATION, Petitioner, v.
PHILIP E. WATSON, as Assessor, etc., Respondent.

308

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Petitioner.

John D. Maharg, County Counsel, A. R. Early, Assistant County Counsel, and John D. Cahill, Deputy County Counsel, for Respondent.

MOSK, J.—This is an original petition for writ of mandate filed by the State Board of Equalization (hereinafter called the board) to compel respondent assessor to comply with his statutory duty of making available for the board's inspection certain records in his custody pertaining to the assessment of three airlines operating in Los Angelss County. (Gov. Code, § 15612.) We have concluded that respondent's objections to discharging his duty are without merit, and hence that a peremptory writ should issue.

For more than a year both the board and the Legislature have been seeking a solution to the difficult problem of developing a uniform formula for allocating and assessing the value of certificated aircraft operating in intrastate or interstate commerce; in general, such aircraft are subject to property taxation on an apportioned basis by the counties in which they are physically present. The matter was first regulated by the board under its rule-making power (Cal. Admin. Code, tit. 18, § 202); that regulation, however, was temporary, covering only the 1967 assessment year. Thereafter the Legislature enacted section 987 of the Revenue and Taxation Code (Stats. 1967, ch. 319) to govern this same matter for the 1968 assessment year; but the statute also was temporary, and will expire by its own terms on July 1, 1968. The Assembly Committee on Revenue and Taxation (hereinafter called the committee) is currently undertaking a study of the entire problem with a view to drafting new legislation prior to the July 1 expiration date.

In the course of this study the committee discovered an apparent discrepancy in local assessment practices, i.e., that Pan American, Delta, and Trans World Airlines showed a lower assessment of flight equipment in Los Angeles County than in San Mateo County (location of the San Francisco International Airport), yet operated a greater number of flights in and out of the former than the latter. As the State Board of Equalization was then conducting an audit of assessments in Los Angeles County, the committee chairman

requested the board specifically to audit the personal property assessments of the three named airlines.[1]

In due course the board provided respondent assessor with a detailed list of the records it wished to examine, explaining its concern over the apparent discrepancy and adding that ''to further aid in evaluating the various possible allocation formulae which may be recommended for uniform application by counties of this state, it is our purpose to examine in depth the original records which show the valuation, allocation and assessment of flight equipment and related personal property of the subject air carriers in San Mateo and Los Angeles Counties.''[2]

The petition alleges that respondent has refused to make these records, or any part of them, available to the board, and that respondent will continue to so refuse unless and until required to comply by court order.

■ The case is a proper one for the exercise of our original jurisdiction. (Cal. Rules of Court, rule 56(a).) To begin with, time is of the essence. If the Legislature is to enact a statute to replace Revenue and Taxation Code section 987 before it expires, it must do so during the current session; and if the board's investigation is to be of any value whatever to the legislative committee, the requested records must be made available as soon as possible, without the delays attendant upon first submitting the case to the lower courts. Any new legislation, moreover, will govern not only Los Angeles County but all counties of the state in which certificated air carriers operate; in such counties the valuation of airline

---

[1]We are told that the committee has a long-standing practice of asking for technical assistance from the board in securing and evaluating information for use in its legislative studies and proposals.

[2]As set forth in the petition, the board requested respondent ''to make all of the Los Angeles County records for the 1967-68 assessment year pertaining to the valuation, allocation and assessment of mobile flight equipment operated by Delta Air Lines, Inc., Pan American Airways and Trans World Airlines available to the board for examination, and particularly:

''(1) The property statements, with all attachments and schedules, as reported by the taxpayers; any listings of aircraft showing cost, as well as items and costs of other property used in connection with the air lines' flight activity, including but not limited to machinery, equipment, rotable and other parts, and fuel;

''(2) All working papers of respondent's office showing computations with respect to valuing, allocating and assessing the flight equipment; and

''(3) Any other records and documents of respondent's office pertaining to the valuation, allocation and assessment of the above-described personal property of the designated taxpayers.''

flight equipment runs into the millions of dollars, and hence affects the assessment rolls, the tax rates, and the ultimate burden on the taxpaying public. Finally, it is apparent that the question of the board's right of access to county assessors' records transcends the particular dispute before us, and generally bears on the board's discharge of its statewide supervisory duties in the field of property taxation. It follows, as in *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593], that "the issues presented are of great public importance and must be resolved promptly."

A prima facie case is stated for issuance of the writ of mandate. Government Code, section 15606 and following declare the powers and duties of the board and its authority over county assessors. Thus the board is empowered to "Prescribe rules and regulations to govern . . . assessors when assessing" (§ 15606, subd. (c)) and to "instruct, advise, and direct assessors as to their duties under the laws" (§ 15608). Controlling here is section 15612, which provides that "The board may inspect, either as a board, individually, or by its duly appointed representative, the work of any local officers whose duties relate to the assessment of property for taxation and the collection of taxes. *It may require such officers to produce any records in their custody,* including, but not limited to, records relating to the assessment of specific properties and give testimony with reference to such matters of assessment and tax collecting as it deems useful to it in its investigations." (Italics added.)

Respondent is such a "local officer" whose duties relate to assessment of property. Section 15612 empowers the board to "require" him to produce "any" records in his custody, expressly including records "relating to the assessment of specific properties" such as that owned by the three named airlines. The statute, furthermore, gives respondent no discretion to withhold such records from inspection by the board. In such circumstances, mandate is the proper remedy to compel respondent to comply with the ministerial duty imposed on him by law. (Code Civ. Proc., § 1085; *County of Sacramento* v. *Hickman* (1967) *supra,* 66 Cal.2d 841, 845, and cases cited.)

In opposition to the petition, respondent first contends that the records in question are confidential and are closed to the public, citing Revenue and Taxation Code sec-

tions 451 and 408.[3] ▇ There is no doubt that members of the general public have no right of access to such records; but section 408, which so provides, contains an explicit exception governing the present case. Subdivision (c) of that section, added by the 1966 property tax reform legislation (Stats. 1966, First Ex. Sess., ch. 147), commands that "The assessor *shall* disclose information, furnish abstracts or permit access to *all* records in his office" to certain named governmental agencies, including the State Board of Equalization. (Italics added.)[4] By such amendments the Legislature manifested a clear intent to deny to local assessors their former power of withholding records from governmental agencies having an interest in inspecting them. That right of inspection is an essential part of the tax reform program, and must be scrupulously respected.

▇ Respondent's remaining points are equally devoid of merit. He contends that the committee chairman's request to the board was "of no legal effect" because it was not the result of formal action by a majority of committee members. But there is no sufficient showing to overcome the presumption that the chairman acted in compliance with his committee's rules or direction; moreover, the board is entitled to demand this information for its own use regardless of any additional need therefor by a legislative committee.[5] Respondent's somewhat obscure complaint as to the timing of the board's original request is irrelevant, in view of his present and continuing refusal to comply. Also irrelevant is his charge that the board "refused to disclose" the purpose for which the records were sought; respondent must now be well

---

[3]Section 451 provides that "All information required by the assessor or furnished in the property statement shall be held secret by the assessor. The statement is not a public document and is not open to inspection, except as provided in Section 408 [discussed *infra* in text]."

[4]The present form of Government Code section 15612, quoted above, is likewise a product of the 1966 legislation. Prior to that reform the section provided that the board could only require assessors to produce "any public records in their custody"; the 1966 Legislature deleted the "public" qualification and added the broad language, "including, but not limited to, records relating to the assessment of specific properties. . . ." (See generally, Carr, *Need for Disclosure in Property Tax Proceedings* (1965) 40 State Bar J. 794.)

[5]In this regard the petition alleges—and respondent does not challenge the allegation—that the records in issue "are further relevant to, and will be used together with other information which the board has accumulated in determining what if any further rules, regulations or instructions should be issued [by the board] for aircraft allocation and assessment pursuant to sections 15606 and 15608 of the Government Code."

aware of that purpose, and in any event no such condition on the board's power is imposed by section 15612. Finally, respondent argues that the board seeks ''more data than is needed'' in that the ''rotable and other parts'' mentioned in the request are assertedly not ''mobile flight equipment.'' But section 15612 authorizes no such censorship of the board's request either by the local assessor or by the courts: as noted above, it empowers the board to require assessors ''to produce any records in their custody,'' not merely those which a local assessor deems the board ''needs'' for some limited purpose. Respondent's duty under this statute is clear, and it is time that he performed it.

Let a peremptory writ of mandate issue as prayed. This order is final forthwith.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.