[Civ. No. 15115. Third Dist. Dec. 5, 1975.]

HARRIET W. HENDERSON et al., Plaintiffs and Respondents, v. DOW BETTIS, as Assessor, etc., Defendant and Appellant.

## COUNSEL

Bagshaw, Martinelli, Corrigan & Jordan and Leland H. Jordan for Defendant and Appellant,

Carr, Kennedy, Peterson & Frost and Daniel S. Frost for Plaintiffs and Respondents.

## OPINION

**REGAN, Acting P. J.**—By their petition for a writ of mandate, petitioners allege they had demanded of the Assessor of Plumas County that he furnish to them "any and all information and records relating to the assessment of petitioners' said real property for the tax fiscal year 1974-1975, including any and all market data relating to the sale of any property comparable to the property of petitioners upon which respondent bases his assessment of petitioners' property in whole or in part." The demand was made pursuant to petitioners' applications for reduction in their real property assessments which had been set for hearing before the Plumas County Board of Equalization. The respondent assessor refused to provide the market data and information gathered by him which he intended to present during the course of the equalization hearing, unless the petitioners were willing to exchange such information in accordance with the provisions of Revenue and Taxation Code section 1606. The trial court issued a peremptory writ of mandate directing respondent to furnish the data and information sought.

The assessor appeals.

This case, one of first impression, involves the construction and interpretation of sections 1606 and 408 of the Revenue and Taxation Code.

Section 1606 provides as follows: "(a) At the time of filing the application [for reduced assessment] *or at any time prior to 20 days before the commencement of the hearing on the application,* any applicant for a change of an assessment on the local roll or the assessor, in those cases, where the assessed value of the property involved, as shown on the current assessment roll, exceeds twenty-five thousand dollars ($25,000) without regard to any exemptions, may cause an exchange of information between himself and the other party by submitting the following data to the other party in writing:

"(1) Information stating the basis of such party's opinion of value.

"(2) When the opinion of value is to be supported with evidence of comparable sales, information identifying the properties with sufficient certainty such as by assessor parcel number, street address or legal description of the property, the approximate date of sale, the applicable zoning, the price paid, and the terms of the sale, if known.

"(3) When the opinion of value is to be supported with evidence based on an income study, information relating to income, expenses and the capitalization method.

"(4) When the opinion of value is to be supported with evidence of replacement cost, information relating to date of construction, type of construction, replacement cost of construction, obsolescence, allowance for extraordinary use of machinery and equipment, and depreciation allowances.

"(b) Notwithstanding any limitation on assessed value contained in subdivision (a), if an applicant for a change of an assessment or the assessor has submitted the data required by subdivision (a) within the specified time, at least 10 days prior to the hearing the other party shall submit to the party who caused the exchange of information in writing the following data:

"(1) Information stating the basis of such other party's opinion of value.

"(2) When the opinion of value is to be supported with evidence of comparable sales, information identifying the properties with sufficient certainty such as by assessor parcel number, street address or legal description of the property, the approximate date of sale, the applicable zoning, the price paid, and the terms of the sale, if known.

"(3) When the opinion of value is to be supported with evidence based on an income study, information relating to income, expenses and the capitalization method.

"(4) When the opinion of value is to be supported with evidence of replacement cost, information relating to date of construction, type of construction, replacement cost of construction, obsolescence, allowance for extraordinary use of machinery and equipment, and depreciation allowances.

"The person assigning a hearing date shall provide adequate notice to the parties of such date, so that the exchange of information permitted by this section can be made without requiring a continuance of the hearing.

"Whenever information has been exchanged pursuant to this section the parties may not introduce evidence on matters not so exchanged unless the other party consents to such introduction. However, at the hearing, each party may introduce new material relating to the information received from the other party. If a party introduces new material at the hearing, the other party, upon his request, shall be granted a continuance for a reasonable period of time.

"Nothing in this section shall be construed as an intent of the Legislature to change, alter or modify generally acceptable methods of using the sales approach, income approach, or replacement cost approach to determine full cash value." (Italics added.)

The pertinent subdivisions of section 408 provide as follows: "(b) The assessor may provide any appraisal date in his possession to the assessor of any county and shall provide any market data in his possession to an assessee of property or his designated representative upon request. The assessor shall permit an assessee of property or his designated representative to inspect at the assessor's office any information and records, whether or not required to be kept or prepared by the assessor, relating to the appraisal and the assessment of his property. An assessee or his designated representative, however, shall not be provided or permitted to inspect information and records, other than market data, which also relate to the property or business affairs of another person, unless such disclosure is ordered by a competent court in a proceeding initiated by a taxpayer seeking to challenge the legality of his assessment."

"(d) For purposes of this section, 'market data' means any information in the assessor's possession, whether or not required to be prepared or kept by him, relating to the sale of any property comparable to the property of the assessee, if the assessor bases his assessment of the assessee's property, in whole or in part, on such comparable sale or sales. The assessor shall provide the names of the seller and buyer of each property on which the comparison is based, the location of such property, the date of the sale, and the consideration paid for the property whether paid in money or otherwise, but for purposes of providing such market data, the assessor shall not display any document relating to the business affairs or property of another."

The assessor first points out that the taxpayers in this case waited until less than 20 days remained before the equalization hearing before making a demand upon the assessor pursuant to Revenue and Taxation Code section 408; that they demanded he furnish them not only the information used to make the original assessment, but also furnish all appraisal data he intended to present to the local board of equalization. By utilizing this procedure, the assessor claims the taxpayers are seeking to avoid their reciprocal obligation under section 1606 to furnish to the assessor the data which they intended to present at the hearing. The assessor contends the strategy resorted to by the taxpayers is repugnant to the legislative intent inherent in the enactment of section 1606 of the Revenue and Taxation Code, and that the timing of the taxpayers' demand was intended to circumvent the exchange requirements of that section.

In order to avoid such a result, the assessor contends that an "apparent inconsistency" arises when sections 408 and 1606 of the Revenue and Taxation Code are first compared. He argues that this apparent inconsistency lies in the fact that section 408 appears to give to the taxpayer a right to obtain any and all information constituting the basis of the assessor's opinion of value, whereas section 1606 at least implies that the taxpayer is entitled to such information only if he first offers to give similar information relating to his opinion of value. He argues the apparent inconsistency can be reconciled if the differing purposes underlying these two code sections is recognized, as follows:

Section 408 is found in part 2 of division 1 of the Revenue and Taxation Code. Chapter 3 of this part is entitled "Assessment Generally." These portions of the code are concerned primarily with valuation principles to be observed by the assessor in making his appraisals *for purposes of preparing the assessment roll.* Thus, section 408 is intended to

outline the rights of the taxpayer and the assessor with respect to the information used by the assessor for these purposes. (In general, see Ehrman & Flavin, Taxing Cal. Property, §§ 39, 267, 268; 22 Hastings L.J. 1.)

On the other hand, section 1606 is found in part 3 of division 1 of the code. Chapter 1 of this part is entitled "Equalization by County Board of Equalization." Thus, this chapter deals with the procedures governing the *equalization of the assessment roll by county boards of equalization.*

If the property owner disagrees with the appraisal and assessment of his property as it appears on the assessment roll, he may apply for a reduction. (Rev. & Tax. Code, § 1603.) The equalization process then begins. The assessor contends that it is at this stage (and only at this stage) that section 1606 applies.

The assessor argues that the equalization process is a true adversary proceeding (see, e.g., Rev. & Tax. Code, §§ 1607, 1609.4, 1611 and 1611.5), and in this connection that section 1606 is a discovery device created by the Legislature to promote a fair and effective equalization process in order to take the "game" and element of surprise out of the proceedings. (See *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) He further argues that by enacting section 1606, the Legislature has indicated that the taxpayer is not entitled to additional information gathered by the assessor solely for the equalization hearing *unless* the taxpayer is willing to reciprocate and provide the assessor with like information regarding his case. The assessor contends that common decency and fairness require the taxpayer to reciprocate. He concludes: "Section 1606 is meaningless and unnecessary if it is the intent of Section 408 to allow a taxpayer complete access to the Assessor's appraisal data after the taxpayer has filed an application for a reduction in assessment. If Section 408 allows the taxpayer, at the eleventh hour, to demand of the Assessor all of the evidence which the Assessor intends to introduce at the equalization hearing, then the Legislature might as well repeal Section 1606. Under such circumstances, no taxpayer would ever proceed under Section 1606 which imposes upon him an obligation to submit his data to the Assessor prior to the hearing."

▮ The assessor asserts an "apparent inconsistency" or conflict between sections 408 and 1606 of the Revenue and Taxation Code. If there is no such conflict, however, the supposed need for statutory

construction and interpretation disappears, and the assessor's argument must fail. (See *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908]; *First Congreg. Church* v. *County of L.A.* (1937) 9 Cal.2d 591, 594 [71 P.2d 1106].) A careful reading of the two sections discloses no conflict between sections 408 and 1606; section 408 does not render section 1606 "meaningless and unnecessary;" and the two sections provide the taxpayer with alternative procedures for obtaining information used by the assessor in his appraisal of the taxpayer's property.

There are several important differences between the two statutes which support this conclusion. First, section 408 can be used *only* by the taxpayer to obtain any information the assessor has relating to the appraisal and assessment of his property as long as it does not relate also to the property or business affairs of another, and the assessor's market data as defined in that section. Thus, the taxpayer enjoys an advantage in that he is not required to disclose his market data to the assessor (unless the property has an assessed value of more than $25,000). The procedure under section 408 has the disadvantage, however, of being restricted to data relating to comparable sales, and thus is of no use in obtaining income or other nonsales valuation data. (See Ehrman & Flavin, *supra*, (1975 Supp.) § 468, pp. 250-251.)

Section 1606, on the other hand, allows the taxpayer to obtain from the assessor the information on which his opinion of value is based. In addition, under this same section, the assessor has the right to initiate the exchange of information in cases where the property has an assessed value of $25,000 or more. In such a case, the assessor may avoid any "eleventh hour" demand for information by invoking the exchange procedure under section 1606. In an exchange of information, the opinion of value may be supported with evidence of comparable sales, income studies, or replacement costs. In each instance, the statute provides in detail what types of information must be provided by each party to the exchange.

Once the exchange procedure under section 1606 has been invoked by either party, the parties may not introduce evidence on matters not revealed in the exchange unless the other party consents, although they may introduce new material relating to the information received from the other party. If this is done, the one to whom the material is new may obtain a continuance of the hearing.

It is clear from the foregoing that the two statutory procedures are entirely different. They provide alternatives, each of which has its own advantages and disadvantages. We conclude there is no conflict between the two code sections and thus there is no need for statutory construction. Either method of procedure is available to the taxpayer.

We make two further observations. The assessor's argument based on the phraseology of the headings is meritless. Section 6 of the Revenue and Taxation Code specifically provides as follows: "Division, part, chapter, article, and section headings do not in any manner affect the scope, meaning, or intent of the provisions of this code." (See also *In re Halcomb* (1942) 21 Cal.2d 126, 130 [130 P.2d 384].)

■ Secondly, the assessor maintains that to give independent meaning to section 408 as a valid alternative to obtaining information after a request for a reduction has been made, places the assessor at a "distinct disadvantage." He argues the taxpayer gets the opportunity to review in advance the case which the assessor will present at the equalization hearing and at the same time may refuse to allow the assessor the opportunity to review the case to be presented by the taxpayer. These contentions are meritless.

"In the past, those attempting to understand the assessment process and determine whether it was being properly carried out often encountered a wall of secrecy around the assessor's records. Few taxpayers had the courage or financial resources to challenge the assessor's bald assertion that the information in his records was confidential." (Ehrman & Flavin, *supra,* § 39, p. 46.)

It was not until 1961 that section 408 of the Revenue and Taxation Code was broadened to allow the assessee to inspect information and records relating to the appraisal and assessment of his property. By the enactment of section 1606 of the Revenue and Taxation Code, it is extremely doubtful that the Legislature intended to do away with this valuable right. (See *People* v. *Connor* (1964) 229 Cal.App.2d 716, 718 [40 Cal.Rptr. 603] [repeal by implication not favored]; cf. *State Board of Equalization* v. *Watson* (1968) 68 Cal.2d 307, 312 [66 Cal.Rptr. 377, 437 P.2d 761]; in general, see Carr, *Need for Disclosure in Property Tax Proceedings,* 40 State Bar J. 794.)

More to the point, however, is the fact that it is the assessor who enjoys the superior advantage. The law presumes that an assessor has per-

formed his duties properly and that his assessments are both regularly and correctly made. (*Westlake Farms, Inc.* v. *County of Kings* (1974) 39 Cal.App.3d 179, 186-187 [114 Cal.Rptr. 137].) Furthermore, should the county board of equalization adopt the position of the assessor, the determination of the board will not be rejected by the reviewing court if there is in the record substantial evidence to support the board's determination. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 169 [116 Cal.Rptr. 160]; *Westlake Farms, Inc.* v. *County of Kings, supra,* 39 Cal.App.3d at p. 183.)

■ We conclude that section 408 of the Revenue and Taxation Code is clear on its face, is not unfair, and does nothing more than set up a procedure affording the taxpayer access to information relating to the appraisal and assessment of his property. Section 1606 merely establishes an alternative procedure which may be followed.

The judgment is affirmed.

Evans, J., concurred.

Janes, J., concurred in the result.