[Civ. No. 55422. Second Dist., Div. Five. Jan. 24, 1980.]

CHANSLOR-WESTERN OIL AND DEVELOPMENT
COMPANY, Plaintiff and Appellant, v.
WILLIAM COOK, as County Assessor, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Thomas J. Fitzgerald and Thomas A. Lance for Plaintiff and Appellant.

Rudnick & Arrache and Brett L. Price for Defendants and Respondents.

OPINION

ASHBY, J.—Appellant Chanslor-Western Oil and Development Company appeals from an order denying a preliminary injunction against respondent William Cook (the County Assessor of Santa Barbara County) and his agents.

In 1976 appellant, through its parent company, Santa Fe Industries, Inc., acquired the assets of Westates Petroleum Company. Prior to making a competitive bid on Westates' assets, appellant prepared a complex appraisal of the future net income stream derivable from Westates' oil and gas producing properties.

Subsequent to the acquisition, the assessor obtained appellant's records concerning this transaction, pursuant to his power under Revenue and Taxation Code section 441, subdivision (d), to require a taxpayer to provide details of property acquisition transactions. It is appellant's contention that the documents contained "[t]he assumptions and methodology used in generating such an appraisal [which] are top level corporate secrets which, if disclosed to competitor companies, would result in a serious if not total loss of competitive advantage in bidding on future oil and gas property acquisitions."

Chevron Oil Company, a competitor of appellant, has filed an application seeking reduction of the assessor's assessment of one of its oil and gas producing properties. In defending his assessment of the Chevron property, the assessor proposes to introduce evidence of sales of comparable properties, including appellant's purchase of Westates' properties.

Appellant seeks a preliminary injunction restraining the assessor from disclosing, in the course of the Chevron proceeding, the following information acquired from appellant:

"7. The price paid for the working interest acquired;

"8. The number of barrels of oil estimated by plaintiff and its parent, Santa Fe Industries, to be recoverable in the future from the working interest acquired by plaintiff;

"9. The gross future income estimated by plaintiff and its parent to be recoverable from the working interest production acquired in the purchase;

"10. The crude oil price assumed by plaintiff on the projected date of acquisition;

"11. The maximum escalation of crude oil prices assumed by plaintiff and its parent for purposes of formulating their bid;

"12. The period of years for escalation of crude oil prices assumed by plaintiff and its parent in their computations;

"13. The expected net future operation profit projected by plaintiff and its parent for purposes of formulating their bid;

"14. The discount rate assumed by plaintiff and its parent, for purposes of reflecting their level of confidence regarding the risk associated with the acquired properties producing the projected future net operating profit and used in the calculations to project the expected present net worth of the working interest in the acquired properties; and

"15. The effect of the royalty interests the acquired properties are subject to on the discount rate used by plaintiff and its parent in formulating their competitive bid on the acquired properties."[1]

The declarations supporting and opposing the issuance of an injunction and the testimony of appellant's experts at the hearing on the motion were directed to the issue whether disclosure of the information in question would result in unfair competitive disadvantage to appellant. The trial court, although of the opinion that disclosure could cause competitive "havoc" to appellant, concluded that the information was "market data" which the assessor was entitled to disclose in defending his assessment of the Chevron property.

Appellant contends the trial court's interpretation of the law is erroneous, and that under the pertinent provisions of the Revenue and

---

[1] Six other items of information have already been disclosed by appellant to the public: (1) the names of the buyer and seller; (2) the fact that all oil and gas producing properties in North America were acquired in the purchase; (3) the respective oil fields and oil and gas leases acquired in the purchase; (4) the date of acquisition; (5) the percentage of royalty burden to which the properties acquired are subject; and (6) the working interest share acquired in the purchase.

Taxation Code the assessor is required to maintain the confidentiality of the information disclosed by appellant to the assessor. We agree.

DISCUSSION

■ A taxpayer is required under compulsion of law to disclose to the assessor the details of property acquisitions. (Rev. & Tax. Code, §§ 441, subd. (d), 462.)[2]

The basic rule as to the information thus disclosed to the assessor is one of confidentiality.[3] Section 451 provides: "All information requested by the assessor or furnished in the property statement shall be held secret by the assessor. The statement is not a public document and is not open to inspection, except as provided in Section 408." Section 408, subdivision (a), provides in part: "Except as otherwise provided in subdivisions (b) and (c) any information and records in the assessor's office which are not required by law to be kept or prepared by the assessor... are not public documents and shall not be open to public inspection."[4] There is no contention that the documents involved here are "required by law to be kept or prepared by the assessor."

Amendments to the statutes over the years have gradually increased a taxpayer's access to information in the hands of the assessor, but these amendments have scrupulously maintained protection against the disclosure of information relating to the business affairs of other taxpayers. (See Ehrman, *Administrative Appeal and Judicial Review of Property Tax Assessments in California—The New Look* (1970) 22 Hastings L.J. 1, 8-9.)

---

[2]Unless otherwise indicated, all section references hereafter are to the Revenue and Taxation Code.

[3]The main purpose of the confidentiality requirement is to encourage full disclosure by the taxpayer supplying the information. (See *Gallagher v. Boller* (1964) 231 Cal. App.2d 482, 491 [41 Cal.Rptr. 880].)

[4]The California Records Act also contains exemptions in Government Code section 6254 that "nothing in this chapter shall be construed to require disclosure of records that are: [¶]...(i) Information required from any taxpayer in connection with the collection of local taxes which is received in confidence and the disclosure of the information to other persons would result in unfair competitive disadvantage to the person supplying such information; [¶]....[¶] (k) Records the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law...." (See *Statewide Homeowners, Inc. v. Williams* (1973) 30 Cal.App.3d 567, 569-570 [106 Cal.Rptr. 479].)

The primary exceptions to this rule are "market data" (§ 408, subd. (b)), the assessor's public list of transfers of property interests (§ 408.1), and information ordered disclosed by a court in a proceeding initiated by a taxpayer to challenge the legality of his assessment (§ 408, subd. (b).)[5]

■ Section 408, subdivision (b), requires the assessor to provide "market data" and other records in his possession to an assessee of property upon request. However, market data is defined narrowly in subdivision (d), and both subdivisions (b) and (d) make clear that market data and other assessor's records relating to the taxpayer's assessment are not to be construed to require disclosure of information relating to the business affairs of other taxpayers.

Section 408, subdivision (b), provides: "(b) The assessor may provide any appraisal data in his possession to the assessor of any county and shall provide any market data in his possession to an assessee of property or his designated representative upon request. The assessor shall permit an assessee of property or his designated representative to inspect at the assessor's office any information and records, whether or not required to be kept or prepared by the assessor, relating to the appraisal and the assessment of his property. *Except as provided in Section 408.1, an assessee or his designated representative, however, shall not be provided or permitted to inspect information and records, other than market data, which also relate to the property or business affairs of another person, unless such disclosure is ordered by a competent court in a proceeding initiated by a taxpayer seeking to challenge the legality of his assessment.*" (Italics added.)

Market data is defined in subdivision (d) as follows: "For purposes of this section, 'market data' means any information in the assessor's possession, whether or not required to be prepared or kept by him, relating to the sale of any property comparable to the property of the assessee, if the assessor bases his assessment of the assessee's property, in whole or in part, on such comparable sale or sales. *The assessor shall provide the names of the seller and buyer of each property on which the comparison is based, the location of such property, the date of the sale, and the consideration paid for the property, whether paid in money or*

---

[5]We exclude from discussion the sharing of information between assessors and law enforcement or certain designated official agencies. (§ 408, subds. (b), (c); see *State Board of Equalization v. Watson* (1968) 68 Cal.2d 307, 311-312 [66 Cal.Rptr. 377, 437 P.2d 761].)

*otherwise, but for purposes of providing such market data, the assessor shall not display any document relating to the business affairs or property of another."* (Italics added.)

Except with respect to item 7 on appellant's list, the trial court erred in concluding that the challenged items of information constituted market data within the meaning of this section. Subdivision (d) indicates that market data is limited to the location of the property, the date of the sale, and the consideration paid for the property, if the assessor bases his assessment on such comparable sale.

Section 408.1 requires the assessor to maintain a public list of transfers of interest in property. This section also contains a prohibition on disclosure of information relating to the business affairs of the owner, other than the expressly designated items of information:

"(a)   The assessor shall maintain a list of transfers of any interest in property, other than undivided interests, within the county, which have occurred within the preceding two-year period.

"(b)   The list shall be divided into geographical areas and shall be revised on the 30th day of each calendar quarter to include all such transactions which are recorded as of the preceding quarter.

"(c)   The list shall contain the following information:

"(1)   Transferor and transferee, if available;

"(2)   Assessor's parcel number;

"(3)   Address of the sales property;

"(4)   Date of transfer;

"(5)   Date of recording and recording reference number;

"(6)   Where it is known by the assessor, the consideration paid for such property; and

"(7)   Additional information which the assessor in his discretion may wish to add to carry out the purpose and intent of this section. *Other than sales information, the assessor shall not include informa-*

*tion on the list which relates to the business or business affairs of the owner of the property, information concerning the business carried on upon the subject property, or the income or income stream generated by the property.*

"(d)   The list shall be open to inspection by any person. The assessor may require the payment of a nonrefundable fee equal to an amount which would reimburse local agencies for their actual administrative costs incurred in such inspections or ten dollars ($10), whichever is the lesser amount.

"(e)   The provisions of this section shall not apply to any county with a population of under 50,000 people, as determined by the 1970 federal decennial census." (Italics added.)

Thus the numerous items in the appraisal report which was prepared for appellant prior to its competitive bid on the assets of Westates Petroleum Company, reflecting such matters as appellant's assumptions as to the amount of oil recoverable, the cost of recovery, the future price of oil, the risk factor, appellant's after-tax income, and the acceptable rate of return to appellant, do not constitute market data which the assessor shall disclose, but rather constitute business affairs of appellant which the assessor may not disclose except under a court order pursuant to section 408, subdivision (b).

The provision in section 408, subdivision (b), for court-ordered disclosure contemplates a somewhat different situation than the present one. Under that provision, Chevron, having initiated a proceeding challenging the legality of its assessment, might seek a court order requiring the assessor to disclose confidential information about appellant, and the court could weigh Chevron's need for the information against the competitive disadvantage which would be suffered by appellant upon disclosure. (See Ehrman, *supra,* 22 Hastings L.J. at pp. 27-28.) Whether the *assessor* may seek a court order authorizing disclosure is not as clear. But certainly the assessor cannot on his own initiative disclose confidential information.

Respondent argues that in defending his assessment of the Chevron property the assessor has the right to use any information in his possession, even if it relates to the business affairs of another taxpayer. ■ Respondent relies upon section 1609.4, which sets forth certain procedures to be used in a hearing on an application for reduc-

tion of assessments, and which states in part: "The assessor may introduce new evidence of full cash value of a parcel of property at the hearing *and may also introduce information obtained pursuant to Section 441.*" (Italics added.) However, the procedural rules for the conduct of such hearings are subject to the qualification that they shall not "be construed as permitting any violation of Section 408 or 451." (§ 1609.6 [formerly § 1605.1].) In order to construe all sections harmoniously, which we are required to do (Code Civ. Proc., § 1858), we must conclude that the assessor's use of "information obtained pursuant to Section 441" is limited to either market data or information obtained from the taxpayer seeking the reduction. (Ehrman & Flavin, Taxing California Property (1st ed. 1967) § 270, pp. 247-248 & fn. 9; *id.* (2d ed. 1979) § 15.5, pp. 357-358.)

Another procedure by which a taxpayer may obtain information from the assessor is to request an exchange of information pursuant to section 1606. (See *Henderson* v. *Bettis* (1975) 53 Cal.App.3d 486, 493-494 [126 Cal.Rptr. 199].) But that section, too, must be construed in light of sections 408 and 451, and thus it does not sanction a taxpayer's obtaining information about other taxpayers' business affairs which would otherwise be secret. (Ehrman & Flavin *supra* (1st ed. 1967) § 270, p. 248, fn. 9; *id.* (1976) supp.) § 468, pp. 282-284.)

We conclude that with the exception of item 7, the trial court erred in denying appellant a preliminary injunction to restrain the assessor from disclosing confidential information at the Chevron hearing.[6]

The order denying a preliminary injunction is reversed.

Stephens, J., concurred.

KAUS, P. J.—I concur in the result, but have nagging doubts concerning some of the court's reasoning.

1. I cannot agree that the definition of market data contained in subdivision (b) of section 408 does not include the information here involved: the subdivision speaks of "any information." What saves appellant is, I believe the last proviso—that the "assessor shall not display any document relating to the business affairs...of another." Obviously this prohibition cannot be circumvented by withholding the

---

[6]This conclusion makes it unnecessary to consider appellant's other arguments.

document and displaying copies or summaries containing the same information.

2.   I do not believe the court's reliance on section 408.1, subdivision (c)(7) is warranted or necessary. That subsection refers to information available to the general public, as distinguished from taxpayers engaged in litigation with the assessor.

3.   Nevertheless the result of the court's opinion is manifestly correct, not only because it accords with the spirit of the Revenue and Taxation Code, but also because, I believe, the information involved is a trade secret. (See Evid. Code, § 1060; Gov. Code, § 6254, subd. (i).)

Respondents' petition for a hearing by the Supreme Court was denied May 14, 1980.