[Civ. No. 38930. First Dist., Div. Four. Dec. 14, 1976.]

MARVIN L. PORTEN, Plaintiff and Appellant, v.
UNIVERSITY OF SAN FRANCISCO, Defendant and Respondent.

**COUNSEL**

Marvin L. Porten, in pro. per., for Plaintiff and Appellant.

Low, Ball & Lynch and David R. Vogl for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Marvin L. Porten appeals from a judgment of dismissal rendered after a demurrer to his complaint was sustained without leave to amend. Appellant's complaint prayed damages against respondent University of San Francisco arising out of the university's claimed misconduct in disclosing to the State Scholarship and Loan Commission the grades appellant had earned at Columbia University before transferring to the University of San Francisco. Appellant alleged that he had sought and received assurances from the university that his Columbia grades would be used only for the purpose of evaluating his application for admission, that they would be kept confidential and that they would not be disclosed to third parties without appellant's authorization. It is also alleged that the State Scholarship and Loan Commission did not ask the university to send appellant's Columbia University transcript and that the commission did not have a need for that transcript.

Respondent's demurrer is to be treated as admitting the truthfulness of all properly pleaded factual allegations of the complaint, but not contentions, deductions or conclusions of fact or law. (See *White* v. *Davis*

(1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) The legal effect of the facts alleged in the complaint is a question of law. (*Hendrickson* v. *California Newspapers, Inc.* (1975) 48 Cal.App.3d 59, 61 [121 Cal.Rptr. 429]; Code Civ. Proc., § 589.)

According to Prosser, the courts have recognized four distinct forms of tortious invasion of privacy: (1) the commercial appropriation of the plaintiff's name or likeness (codified in California in 1971 in Civ. Code, § 3344, subd. (a)); (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity which places the plaintiff in a false light in the public eye; and (4) public disclosure of true, embarrassing private facts about the plaintiff. (Prosser, Torts (4th ed.) § 117, pp. 804-814; see also *Johnson* v. *Harcourt, Brace, Jovanovich, Inc.* (1974) 43 Cal.App.3d 880, 887 [118 Cal.Rptr. 370].)

In discussing the right of privacy as it relates to the public disclosure of private facts, Prosser states: "Some limits of this branch of the right of privacy appear to be fairly well marked out. The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity." (Prosser, Torts, *supra,* § 117, p. 810.) ■ Except in cases of physical intrusion, the tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few. (*Schwartz* v. *Thiele* (1966) 242 Cal.App.2d 799, 805 [51 Cal.Rptr. 767].) The gravamen of the tort is unwarranted publication of intimate details of plaintiff's private life. (*Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 322, 323 [239 P.2d 876]; *Schwartz* v. *Thiele, supra,* 242 Cal.App.2d at p. 805.) The interest to be protected is individual freedom from the wrongful publicizing of private affairs and activities which are outside the realm of legitimate public concern. (See *Coverstone* v. *Davies, supra,* 38 Cal.2d at p. 323; *Stryker* v. *Republic Pictures Corp.* (1951) 108 Cal.App.2d 191, 194 [238 P.2d 670].)

In this case, the university's disclosure of the Columbia transcript to the Scholarship and Loan Commission was not a communication to the public in general or to a large number of persons as distinguished from a communication to an individual or a few persons. Therefore, the university is correct in its contention that appellant's complaint fails to

state a cause of action based on the so-called "public disclosure of private facts" branch of the tort of invasion of privacy.

Appellant argues however that his complaint states a cause of action under the privacy provision added to the state Constitution in 1972. Section 1 of article I of the California Constitution provides:

"[*Inalienable Rights*]

SECTION 1. All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy.*" (Italics added.)

The new language was first construed by the California Supreme Court in *White* v. *Davis, supra,* 13 Cal.3d 757: "the full contours of the new constitutional provision have as yet not even tentatively been sketched, . . ." (*White* v. *Davis, supra,* at p. 773; see also *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].)

■ The elevation of the right to be free from invasions of privacy to constitutional stature was apparently intended to be an expansion of the privacy right. The election brochure argument states: "The right to privacy is much more than 'unnecessary wordage.' It is fundamental to any free society. Privacy is not now guaranteed by our State Constitution. This simple amendment *will extend various court decisions* on privacy to insure protection of our basic rights." (Cal. Ballot Pamp. (1972) p. 28.)[1] (Italics added.)

■ The constitutional provision is self-executing; hence, it confers a judicial right of action on all Californians. (*White* v. *Davis, supra,* 13 Cal.3d at p. 775.) Privacy is protected not merely against state action; it·is considered an inalienable right which may not be violated by anyone.[2]

[1]In *White* v. *Davis,* the California Supreme Court pointed to the election brochure argument as the only legislative history available in construing the constitutional amendment. In footnote 11 at page 775, the court stated: "California decisions have long recognized the propriety of resorting to such election brochure arguments as an aid in construing legislative measures and constitutional amendments adopted pursuant to a vote of the people. (See, e.g., *Carter* v. *Com. on Qualifications, etc.* (1939) 14 Cal.2d 179, 185 [93 P.2d 140]; *Beneficial Loan Society, Ltd.* v. *Haight* (1932) 215 Cal. 506, 515 [11 P.2d 857]; *Story* v. *Richardson* (1921) 186 Cal. 162, 165-166 [198 P. 1057, 18 A.L.R. 750]; *In re Quinn* (1973) 35 Cal.App.3d 473, 483-486 [110 Cal.Rptr. 881].)"

[2]The language of the election brochure argument refers to "*effective restraints on the information activities of government and business.*" (Cal. Ballot Pamp. (1972) p. 26.)

(See *Annenberg* v. *Southern Cal. Dist. Council of Laborers* (1974) 38 Cal.App.3d 637 [113 Cal.Rptr. 519]; 26 Hastings L.J. 481, 504, fn. 138 (1974).)

The California Supreme Court has stated that the privacy provision is directed at four principal "mischiefs": "(1) 'government snooping' and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records." (*White* v. *Davis, supra,* 13 Cal.3d at p. 775.) The *White* case concerned the use of police undercover agents to monitor class discussions at a state university. In ruling on the sufficiency of a complaint challenging the legality of such a practice, the Supreme Court found that a cause of action had been stated on the basis that the practice threatened freedom of speech and association and abridged the students' and teachers' constitutional right of privacy. The *White* court noted that the police surveillance operation challenged there epitomized the kind of governmental conduct which the new constitutional amendment condemns. (See *White* v. *Davis, supra,* 13 Cal.3d at p. 775.)

Appellant's complaint obviously involves a far different factual situation from that before the court in *White*; appellant contends that the allegedly unauthorized transmittal of his Columbia University transcript to the State Scholarship and Loan Commission falls within the proscribed third "mischief"—"the improper use of information properly obtained for a specific purpose, *for example, the use of it for another purpose or the disclosure of it to some third party.*" (*White* v. *Davis, supra,* 13 Cal.3d 757, 775.) (Italics added.)

It should be noted that former section 22504.5[3] of the Education Code (in effect during the events in issue here) provided:

"§ 22504.5.

"No teacher, official, employee, or governing board member of any public or private community college, college, or university shall permit access to any written records concerning any particular pupil enrolled in

[3](Repealed by Stats. 1975, ch. 816, § 5.)

the school in any class to any person except under judicial process unless the person is one of the following:

"(a)  Either parent or a guardian of such pupil.

"(b)  A person designated, in writing, by such pupil if he is an adult, or by either parent or a guardian of such pupil if he is a minor.

"(c)  An officer or employee of a public, private, or parochial school where the pupil attends, has attended, or intends to enroll.

"(d)  An officer or employee of the United States, the State of California, or a city, city and county, or county seeking information in the course of his duties.

"(e)  An officer or employee of a public or private guidance or welfare agency of which the pupil is a client.

"Restrictions imposed by this section are not intended to interfere with the preparation and distribution of community college, college and university student directories or with the furnishing of lists of names, addresses, and telephone numbers of community college, college and university students to proprietors of off-campus housing. Such restrictions are not intended to interfere with the giving of information by school personnel concerning participation in athletics and other school activities, the winning of scholastic or other honors and awards, and other like information.

"Notwithstanding the restriction imposed by this section, a governing board may, in its discretion, provide information to the staff of a college, university, or educational research and development organization or laboratory if such information is necessary to a research project or study conducted, sponsored, or approved by the college, university, or educational research and development organization or laboratory and if no pupil will be identified by name in the information submitted for research. Notwithstanding the restrictions imposed by this section an employer or potential employer of the pupil may be furnished the age and scholastic record of the pupil and employment recommendations

prepared by members of the school staff."[4] Moreover, recently enacted federal and state statutes recognize a right of privacy in student records. (See 20 U.S.C.A. § 1232g (Family Educational Rights and Privacy Act of 1974); see also Ed. Code, §§ 25430-25430.18.)[5]

■ In view of the foregoing considerations and the broad language of the California Supreme Court in *White* to the effect that the new constitutional provision protecting privacy is aimed at curbing "the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party," the allegations of appellant's complaint, which for present purposes must be deemed true,[6] state a prima facie violation of the state constitutional right of privacy. At trial, of course, the university may contest any of the allegations of the complaint as well as show some compelling public interest justifying the transmittal of the Columbia transcript to the commission. (See *White* v. *Davis, supra,* 13 Cal.3d at p. 775; see also *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859 [132 Cal.Rptr. 464, 553 P.2d 624]; 64 Cal.L.Rev. 347, 352 (1976).)[7]

---

[4]Subdivision (d) of former section 22504.5 of the Education Code provides that colleges shall permit access to student records to officers or employees of the State of California seeking information in the course of their duties. It cannot be determined from the record on appeal whether an officer or employee of the State Scholarship and Loan Commission, in the proper course of his duties, sought Porten's complete undergraduate transcript. If this were shown to be the case, as seems possible, appellant's invasion of privacy action might well be disposed of upon a motion for summary judgment.

[5]This new legislation permits access to student records without student consent when given to agencies or organizations in connection with a student's application for, or receipt of, financial aid. (See 20 U.S.C.A. § 1232g, subd. (b)(1)(D); see also Ed. Code, § 25430.15, subd. (b)(3).)

[6]It should be noted that former section 31243 of the Education Code (which was in effect during the events leading to this action but was repealed by Stats. 1975, ch. 1270, § 5) provided that the State Scholarship and Loan Commission "*may* take into account such factors as the following:
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"(b) Grades in the total undergraduate program." (Italics added.) However, appellant's complaint, here accepted as true, alleges that: "27. The California State Scholarship and Loan Commission did not request that defendant send to it plaintiff's Columbia University transcript, nor did said Commission have a need for plaintiff's Columbia University transcript."

[7]The election brochure argument states: "This right should be abridged only when there is compelling public need. Some information may remain as designated public records but only when the availability of such information is clearly in the public interest.
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"The right to privacy will not destroy welfare nor undermine any important government program. It is limited by 'compelling public necessity' and the public's need to know." (Cal. Ballot Pamp. (1972) p. 28.)

■ The university contends that the appeal is defective because appellant has abandoned the theory of his complaint. Appellant's legal theory was first labeled by him "breach of confidential relationship." Although the complaint may not be a model pleading, the policy of the law is to construe pleadings liberally to the end that cases will be tried on their merits rather than disposed of on technicalities of pleadings. (*Taylor* v. *S & M Lamp Co.* (1961) 190 Cal.App.2d 700, 703 [12 Cal.Rptr. 323]; Code Civ. Proc., § 452.) Mistaken labels and confusion of legal theory are not fatal; if appellant's complaint states a cause of action on any theory, he is entitled to introduce evidence thereon. (See *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Lacy* v. *Laurentide Finance Corp.* (1972) 28 Cal.App.3d 251, 256-257 [104 Cal.Rptr. 547]; *Taylor* v. *S & M Lamp Co., supra,* at pp. 704, 712.) An action cannot be defeated merely because it is not properly named. (*Taylor* v. *S & M Lamp Co., supra,* at p. 712.)

The judgment is reversed with directions to overrule the general demurrer.

Caldecott, P. J., and Rattigan, J., concurred.