Filed 3/7/13  Barnes v. Pittsburg Unif. School Dist. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WILLIE BARNES II et al., <br><br>        Plaintiffs and Appellants, <br><br> v. <br><br> PITTSBURG UNIFIED SCHOOL DISTRICT et al., <br><br>        Defendants and Respondents. | A134679 <br><br> (Contra Costa County <br> Super. Ct. No. MSC08-01846) |

This case arose out of a sexual relationship that Ronald Polk, a vice principal at Pittsburg High School, had with his secretary, Jeannette Barnes, and the way in which Barnes's children learned about it.  Although many of the events surrounding the discovery of the relationship remain disputed, all of the parties agree that two of the children found out about it from Polk.  According to the plaintiffs, they found out when Polk told them, "I'm having sex with your mother."[1]

Jeannette Barnes, her husband Willie Barnes II, and their children sued Polk and the Pittsburg Unified School District and asserted causes of action for negligence, intentional infliction of emotional distress, and public disclosure of private facts.  In granting defendants' motion for summary adjudication, the trial court concluded that plaintiffs had failed to establish that Polk or the school district owed the husband and the children a duty of care or that there had been a public disclosure of private facts.  It then entered summary judgment against the husband and the children on all claims, and

---

[1] Polk denied having made this statement.

1

granted summary adjudication against Jeannette Barnes on the public-disclosure cause of action. The husband and the children appeal, and we affirm.

## I. FACTS

### A. *The Events of August 14, 2007*

Barnes worked as Polk's secretary at Pittsburg High School. She and Polk had a sexual relationship, but she did not consider it to be consensual because she believed her job was at stake.

On the morning of August 14, 2007, Barnes told Polk she was going to report his misconduct to the school district. According to Barnes, Polk responded by threatening to kill her and her family. Meanwhile, Barnes's husband learned of the affair, threatened Polk, and told Polk he was on his way to the high school.

After speaking to Polk and her husband, Barnes left her home to go to the school district offices, which are near the high school. She took her 11-year old daughter Aliah with her. On the way, she received a call from her husband, who reported that he had been in an automobile accident near the school district offices. When Jeannette Barnes got to the scene of the accident, her husband approached her car, got in the driver's seat, and drove away with her and Aliah still in the car. He began to scream at his wife and hit her with a closed fist. Eventually Jeanette Barnes was able to escape from the car and run to a nearby police station.

One of the couple's two older children, 19-year old Alyssa or 16-year old Willie III, overheard their mother on the telephone that morning and knew she was upset. When their mother left the house, Alyssa and Willie assumed she was going to the high school and decided to follow her. They had a friend drive them.

When Alyssa and Willie III arrived at the high school, they saw Polk. Their sister Aliah was there also, apparently having been driven to the school by their father. Polk asked them to come to his office. Alyssa, Willie, and their friend followed Polk into his office, whereupon he told them that he had been having sex with Jeannette Barnes. Aliah remained outside Polk's office and was not part of the conversation. The Barneses' fourth child, Terrance, was not present.

2

According to the complaint, the entire family suffered severe emotional distress as a result of defendants' actions. When Polk told the children of the affair, Willie III was shocked and cried. All of the children required "professional treatment" to help them recover.

B. *Motion for Summary Adjudication*

Polk and the school district moved for summary adjudication. On plaintiffs' negligence and intentional infliction of emotional distress causes of action, defendants moved for summary adjudication only as to Willie Barnes II and the children. On plaintiffs' public-disclosure cause of action, defendants moved for summary adjudication as to all plaintiffs, including Jeannette Barnes. The trial court granted the motion. It rejected the first two causes brought by the husband and the children by concluding that defendants "did not have a special relationship" with them warranting a special duty of care. And it rejected the public-disclosure cause of action brought by all plaintiffs because the evidence showed "the private fact was disclosed to only a few people, and not to the public in general."

Jeannette Barnes did not appeal the trial court's ruling, and her claims against defendants for negligence and intentional infliction of emotional distress are not at issue in this appeal.

## II. DISCUSSION

A. *Standard of Review*

A motion for summary adjudication is reviewed under the same standards as a motion for summary judgment. (Code Civ. Proc., § 437c, subds. (c), (f)(2); *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.) "On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of

fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

We think it is worth pointing out, especially because plaintiffs devote several pages of their brief to the standard of review, that defendants essentially conceded plaintiffs' allegations for purposes of the summary adjudication motion. Accordingly, we are presented in this appeal with purely legal questions. (See *American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [defendant's motion for summary judgment or adjudication can test the sufficiency of the allegations, and its legal effect is the same as a demurrer or motion for judgment on the pleadings].)

B. *Negligence*

There is no independent tort of negligent infliction of emotional distress. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984.) The tort is simply negligence, of which a duty to the plaintiff is an essential element. (*Ibid.*) A duty may be imposed by law or assumed by the defendant, or may exist by virtue of a special relationship. (*Id.* at p. 985.)

" 'Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.' " (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588.)

Plaintiffs argue defendants had a duty "imposed by law *and* created by Polk's conduct" (original italics), which Polk breached by making his "outrageous disclosure" of the sexual relationship.[2] The only specific legal source plaintiffs identify for imposing such a duty is the special relationship between school officials and students. "[O]ur cases have long established that a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." (*Hoyem v. Manhattan Beach City Sch. Dist.*

---

[2] Plaintiffs contend the school district is vicariously liable for Polk's acts. (See Gov. Code, § 815.2, subd. (a).)

4

(1978) 22 Cal.3d 508, 513; see also *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 933-934; *Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 747; Ed. Code, § 44807.)

During oral argument, defense counsel admitted that Willie III was a student at the high school in 2007, although school was in recess in August. Plaintiffs never established that any of the other children were students at Pittsburg High School.

The husband, Willie Barnes II, was obviously not a student, and he was not present when the disclosure to the children was made. Any claim that he was owed a duty therefore can be eliminated straight away. (See *Smith v. Pust* (1993) 19 Cal.App.4th 263, 272-273 [therapist having sex with patient owed no duty to patient's husband]; Civ. Code, § 43.5 [no cause of action for alienation of affection].)

We can also eliminate any claim that Aliah and Terrance were owed a duty. While both were minors, they do not appear to have been Pittsburg High School students, as we have noted, and neither was present when Polk made the disclosure. Beyond castigating Polk for his behavior, plaintiffs fail to suggest any grounds for imposing a duty on Polk for persons not present at the disclosure or for any of the other alleged misdeeds.[3] Plaintiffs cannot and do not argue that a case for " 'bystander' " liability can be made here. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072-1073.)

So we reach the two plaintiffs, Alyssa and Willie III, who were in Polk's office, heard the statement, and could certainly have been distressed by it. We can nevertheless conclude that Polk had no duty to Alyssa, who was an adult and not a Pittsburg High School student. While it is foreseeable that Alyssa would be upset to be told by Polk that he was "having sex" with her mother, we do not believe the law imposes liability for revealing to an adult child a parent's sexual relationship. Our conclusion does not change

---

[3] Jeannette Barnes claims that Polk, in addition to threatening her family, told her that a student had filed a sexual harassment complaint against him in the past. This allegation, even if it is assumed to be true, is immaterial to whether defendants owed the husband and children a duty not to reveal to them the sexual relationship between Jeannette Barnes and Polk.

5

simply because Polk could have declined to be the messenger or could have been less blunt.

Willie III presents a closer question, both because of his age and his status as a student at the school where Polk worked. We will accept, for purposes of this appeal, plaintiffs' assertion that Polk had a duty to supervise and protect Willie even though school was not in session that day. (See *J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 128 [school district and personnel owe a duty of care to children in after-school program].) We do not agree, however, that any such duty to supervise and protect included an obligation on Polk's part to refrain from telling Willie III, under the stressful circumstances of that morning, that Polk was having a sexual relationship with Willie's mother.

The law generally imposes a duty to use due care to avoid injury to others. (See Civ. Code, § 1714.) Before departing from the general rule, courts will examine a number of factors, including foreseeability of harm, degree of certainty that plaintiff suffered injury, closeness of the connection between the defendant's conduct and the injury suffered, moral blame attached to the defendant's conduct, policy of preventing future harm, extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and availability, cost, and prevalence of insurance for the risk involved. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 885-886.)

Plaintiffs offer no discussion of these factors beyond foreseeability. Further, they cite no cases imposing a duty under circumstances even remotely similar to this case.

Mere foreseeability is not determinative in emotional distress cases. (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra,* 48 Cal.3d at pp. 589-590.) No one questions whether Willie III suffered emotional distress. But it is incumbent upon a plaintiff to come forward with policy reasons why a duty of care should be recognized. (*Krupnick v. Hartford Accident & Indemnity Co.* (1994) 28 Cal.App.4th 185, 203.) As plaintiffs have provided none, we are left to our own devices and conclude the policy factors weigh against imposing a duty here. Polk's

6

statement, while not one a son wants to hear, was true. The statement itself was undoubtedly upsetting, but its meaning and the consequences to the family were probably even more so. Polk's underlying conduct in having a sexual relationship with Jeannette Barnes may have been immoral, as Polk admitted, but it is unclear how much moral blame can be attached to telling Willie III the truth about the relationship when its secrecy was quickly unraveling and emotions were running high. While we need not and do not decide whether the law imposed on defendants some duty to Jeannette Barnes, we can conclude that the law imposed no duty on Polk to refrain from revealing the sexual relationship to Willie III under the circumstances in this case.

*C. Intentional Infliction of Emotional Distress*

The trial court granted summary adjudication on plaintiffs' cause of action for intentional infliction of emotional distress "on the same ground" as the cause of action for negligence. Plaintiffs assume the court meant they had failed to establish any duty of care with respect to the intentional infliction of emotional distress cause of action. If so, plaintiffs argue, the court erred because duty is not an element of that cause of action.

The elements of a cause of action for intentional infliction of emotional distress are " ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

Defendants argued in the trial court that Polk's conduct was neither outrageous nor done with the intent to harm. Notwithstanding its "on the same ground" statement, the trial court appears to have agreed with defendants that the first element of plaintiffs' intentional infliction of emotional distress cause of action was missing. In any event, we review the ruling, not the rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.)

Although they are different causes of action, there is an overlap in the legal reasoning for rejecting both the negligence and intentional infliction of emotional distress

7

causes of action of the husband (Willie Barnes II), Aliah, and Terrance. They cannot state a cause of action for intentional infliction of emotional distress because Polk's conduct was not directed at them and did not occur in their presence. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (*Christensen v. Superior Court, supra,* 54 Cal.3d at p. 903; see also *Shin v. Kong* (2000) 80 Cal.App.4th 498, 512 [husband could not state cause of action when he was unaware wife was artificially inseminated with defendant's sperm].)

Accordingly, we are once again left with the claims of Alyssa and Willie III, to whom Polk revealed the sexual relationship.

To state a cause of action for intentional infliction of emotional distress, the conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.) "Intentional infliction of emotional distress requires conduct which is especially calculated to cause and does cause the claimant mental distress of a very serious nature." (*Coon v. Joseph* (1987) 192 Cal.App.3d 1269, 1273, italics omitted.) The court should determine, in the first instance, whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery. (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 87.)

We cannot conclude that it is extreme and outrageous for a person truthfully to reveal a sexual relationship to the teenage children of his married sexual partner. Although plaintiffs cite cases that set out the elements of a cause of action for intentional infliction of emotional distress, they cite not a single case supporting their claim that Polk's statement to Alyssa and Willie III was outrageous and extreme. In fact, the case law suggests that it was not. In *Corales v. Bennett* (9th Cir. 2009) 567 F.3d 554, the Ninth Circuit, applying California law, concluded that a middle school vice principal who issued a "perhaps unduly harsh" warning to a student did not engage in extreme and outrageous conduct, even when the student committed suicide that same day. (*Id.* at pp. 560-561, 571-572; see also *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 533-535

[medical personnel's urgings to husband to "pull the plug" on wife allegedly to reduce medical costs was not extreme and outrageous conduct].)

Nothing in this record suggests Polk sought out Alyssa and Willie III and then subjected them to conduct calculated to cause serious mental distress. (See *Smith v. Pust, supra,* 19 Cal.App.4th at p. 274 [therapist did not seek out husband with intent of regaling him with description of the sexual conquest of wife].) The type of outrageous and extreme conduct required to submit to a jury Willie II's and the children's cause of action for intentional infliction of emotional distress simply is not present here.

D.  *Public Disclosure of Private Facts*

The trial court concluded that plaintiffs' final cause of action, public disclosure of private facts, also failed because an essential element—public disclosure—was missing. Plaintiffs contend, with no citation to authority, that Polk's disclosure to the two Barnes children and their friend was sufficient public disclosure.

The elements of the tort of public disclosure of private facts are " ' "(1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern." ' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 717.)

We agree with the trial court that there was no public disclosure in this case. "[T]he tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." (*Kinsey v. Macur* (1980) 107 Cal.App.3d 265, 270; accord *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 904; *Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, 828; *Schwartz v. Thiele* (1966) 242 Cal.App.2d 799, 805.) "Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." (Rest.2d Torts, § 652D, com. a, p. 384.)

Plaintiffs' public-disclosure claim also fails for another, even more fundamental, reason. Polk's disclosure was not about them. It was about Polk and Jeannette Barnes. The right of privacy is purely personal, and it cannot be asserted by anyone other than the

9

person whose privacy has been invaded.  (*Moreno v. Hanford Sentinel, Inc.* (2009) 172 Cal.App.4th 1125, 1131.

Plaintiffs cannot state a cause of action for public disclosure of private facts because there was no public disclosure and the fact disclosed was not their private fact.

### III. DISPOSITION

The judgment is affirmed.


_____
Humes, J.


We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.